# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

BETSY ROSS                                     :
122 Mincing Lane                               :
Elkton, Maryland 21921                         :        Case No. 1:11-CV-00181-WDQ
                                               :
    -and-                                      :
                                               :
BETSY ROSS AS NEXT FRIEND OF                   :
MINOR K.R.                                     :
122 Mincing Lane                               :
Elkton, Maryland 21921                         :
                                               :        **JURY TRIAL REQUESTED**
              Plaintiffs,                      :
                                               :
-vs-                                           :
                                               :
                                               :
NICHOLAS RICCIUTI                              :
In his official capacity at                    :
Cecil County Department of Social Services     :
325 Fell Road                                  :
Rising Sun, Maryland 21911-2079                :
                                               :
    -and-                                      :
                                               :
MARY KLESIUS                                   :
In her individual and official capacity at     :
Cecil County Department of Social Services     :
8 Vince Court                                  :
Elkton, Maryland 21921-4967                    :
                                               :
    -and-                                      :
                                               :
LATONYA COTTON                                 :
In her individual and official capacity at     :
Cecil County Department of Social Services     :
401 High Street                                :
Chestertown, Maryland 21620-1311               :
                                               :
    -and-                                      :
                                               :
REBECCA SUTTON                                 :
In her individual and official capacity at     :

Page **1** of 19

Cecil County Department of Social Services         :
41 Lakeview Drive         :
Rising Sun, Maryland 21911-1651         :
         :
     -and-         :
         :
KIM COMPTON         :
In her individual and official capacity at         :
Cecil County Department of Social Services         :
District Court Building         :
Elkton, Maryland 21921         :
         :
     -and-         :
         :
TINA LINKOUS         :
In her individual and official capacity at         :
Cecil County Department of Social Services         :
2 Lansdown Court         :
Elkton, Maryland 21921         :
         :
     -and-         :
         :
SUE BAILEY         :
In her individual and official capacity at         :
Cecil County Department of Social Services         :
40 Deer Run Road         :
Chesapeake, Maryland 21915         :
         :
     -and-         :
         :
BARBARA SICILIANO         :
In her individual and official capacity at         :
Cecil County Department of Social Services         :
District Court Building         :
Elkton, Maryland 21921         :
         :
     -and-         :
         :
HELEN MURRAY-MILLER         :
In her individual and official capacity         :
Department of Human Resources – Social Services :
The Talmadge Branch Building         :
1910 North Broadway Street         :
Baltimore, Maryland 21213         :
                    Defendants.     :

**SECOND AMENDED COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS, FOR RELIEF UNDER 42 U.S.C. § 1983 AND FOR OTHER RELIEF**

COMES NOW, Plaintiffs, Betsy Ross and Betsy Ross as next friend of minor K.R., by their attorney Daniel L. Cox, The Cox Law Center, LLC, and sue Defendants under the laws, statutes and common law of the United States, the common law of Maryland, and pertinent statutory Codes, and for their Second Amended Complaint against Defendants, state as follows:

1.      This action arises from Defendants' illegal violation of Plaintiffs' rights to privacy and due process and the protections guaranteed to Plaintiffs under the provisions of United States and Maryland statutory Codes among other violations.  Offending events occured surrounding an investigation into Plaintiff Ross by the Cecil County Department of Social Services ("CCDSS") and its agents, Defendants, and subsequent and ongoing legal actions, policies and practices as well as the disclosure by Defendants, agents of CCDSS, of information protected by a settlement agreement between the parties and violations of the terms of that agreement.

## PARTIES

2.      Plaintiff Betsy Ross is a former president of the Cecil County Foster Parent Association ("CCFPA") and former foster parent.

3.      Defendant Nicholas Ricciuti is the Director of CCDSS, and is sued in his official capacity.

4.      Defendant Mary Klesius was the CCDSS Supervisor of foster care services, and is sued in her official and individual capacity.

5.      Defendant LaTonya Cotton is a social service worker with the CCDSS, and is sued in her official and individual capacity.

6.      Defendant Rebecca Sutton is a social service worker with the CCDSS, and is sued in her official and individual capacity.

7.      Defendant Kim Compton is a social service worker with the CCDSS, and is sued in her official and individual capacity.

8.      Defendant Tina Linkous is the Adoption Coordinator for CCDSS, and is sued in her official and individual capacity.

9.      Defendant Susan Bailey is the Assistant Director of Services for CCDSS, and is sued in

her official and individual capacity.

10.     Defendant Barbara Siciliano is a social worker and supervisor at CCDSS, and is sued in her individual and official capacity.

11.     Defendant Helen Murray-Miller is a foster care licensing coordinator for the Maryland Department of Human Resources ("MDHHR"), Social Services Department, and is sued in her individual and official capacity.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the Fourth and Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), in that it is brought to redress deprivations, under color of law, of rights, privileges and immunities secured by the United States Constitution; under 28 U.S.C. § 1367(a), in that the state law claims raised are so related to the federal claims that they form part of the same case or controversy; and under 28 U.S.C. § 1343(a)(4), in that it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of action for the protection of civil rights.

13.     The venue in this action is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(b)(2) and Md. D. Local Rule 501(4)(a)(i), in that all of the facts giving rise to Plaintiffs' claims arose within this judicial district and the principal offices of the Defendant governmental parties are within this judicial district.

## FACTS

14.      In or around July through August 2008, Plaintiff Ross discovered that the CCDSS, through Defendant Klesius, was placing and managing unspent State funds into the CCFPA checking account and began taking steps to report this apparently unlawful practice by asking Mary Klesius for copies of all CCFPA bank statements, by not immediately agreeing to expend said funds as requested by Mary Klesius, and by making a complaint to the Ombudsman for the MDDHR, John Bertulis.

15.     On August 15, 2008, at 1:30pm, Mary Klesius and Rebecca Sutton pulled Plaintiff Ross out of a foster parent association meeting and informed her that CCDSS was removing her foster care children and that she would be further investigated.

16.     That on or about September 10, 2008, Ombudsman John Bertulis began investigating CCDSS.

17.     On or about August 15, 2008, CCDSS began investigating Plaintiff Ross.

18.     On or about August 15, 2008, at 3:10pm, Defendant Linkous reported allegations of neglect against Plaintiff Ross by calling in a neglect report while driving in Pennsylvania on return from a Friday four (4) hour round-trip "interview" of a ten (10) year old former foster child in Plaintiff Ross's home, known to have a habit of telling wild and imaginative stories not based in any truth.

19.     CCDSS had previously approved the use of Plaintiff Ross's pool at her home for several years. CCDSS never expressed disapproval of the pool, never asked Plaintiff Ross to keep the children away from the pool, and never required Plaintiff Ross to stop using the pool. Even after CCDSS replaced Plaintiff K.R. in Plaintiff Ross's care, CCDSS continued to allow Plaintiff Ross to use her pool.

20.     On or around August 15, 2008, at 1:30pm, Tina Linkous and Mary Klesius decided, based on allegations of neglect, that Plaintiff Ross's foster children, along with her minor-adoptee child K.R., must be removed from Plaintiff Ross's home. Plaintiff Ross's adopted child, adopted only two and a half months prior, and her biological child were not removed.

21.     At or about August 15, 2008, at 4:30pm, CCDSS and its agents, Defendants Sutton, Cotton, and Compton, removed Plaintiff Ross's foster children J.C., J.C., K.C. and I.K.D. from Plaintiff Ross's care and control without valid consent, a warrant, or probable cause or evidence that any child was being abused or in immediate danger of serious harm.

22.     On or about August 15, 2008, at 4:30pm, CCDSS and its agents, Defendants Sutton, Cotton, and Compton, removed Plaintiff Ross's minor adoptee-child, Plaintiff K.R., who was in Plaintiff Ross's full legal custody, care, and control, and three (3) days away from the adoption finalization hearing, from Plaintiff Ross's care and control without valid consent, a warrant, or probable cause or evidence that Plaintiff K.R. was being abused or in immediate danger of serious harm.

23.     Plaintiff Ross did not waive her Fourth Amendment rights or validly consent to Defendants entering her home.

24.     Plaintiffs reasonably expected, at all times, that their property and family would remain private within Plaintiff Ross's home.

25.     In a meeting with Plaintiff Ross on or about September 17, 2008, Defendant Siciliano verbally expressed her support for the actions of Defendant Klesius in removing the children from Plaintiff Ross's home.

26.     On or about September 28, 2008, CCDSS replaced Plaintiff Ross's adoptee child, Plaintiff K.R. in Plaintiff Ross's home, and set another adoption finalization hearing for two (2) weeks later on October 15, 2008.

27.     On or about January 21, 2010, following the revelation of apparently false and contradictory testimony by agents of CCDSS, a settlement agreement was reached between Plaintiff Ross and CCDSS, as represented by counsel, that Ruled Out the false allegations against her and required CCDSS and its agents to maintain complete confidentiality regarding its findings and to forever cease and desist from making any negative or disparaging statements about Plaintiff Ross. (This settlement agreement is attached and incorporated herewith as **EXHIBIT A**).

28.     As part of the settlement of all remaining issues, Plaintiff Ross offered to relinquish her CCDSS foster care home license voluntarily, since her application to become a privately certified and licensed foster care provider was pending with "The Arc – Northern Chesapeake Region" ("The Arc"), a private foster care association, as Plaintiff Ross had previously been informed that a license should not be a problem for her to obtain.

29.     On information and belief, sometime before March 18, 2010, Defendant Helen Murray-Miller, acting as an agent of both MDDHR and the CCDSS foster care authority, communicated to The Arc the false information, supplied to her by CCDSS, that Plaintiff Ross still had "unresolved issues" with CCDSS that would prevent The Arc from granting Plaintiff Ross a private license.

30.     On or about March 18, 2010, The Arc sent Plaintiff Ross a letter stating, in part, "following consultation with our licensed monitor from Department of Human Resources . . . The unresolved and high profile nature of your current situation with several entities determines that it is not a good time to proceed with a home study."

31.     This letter denied Plaintiff Ross's application for a home study and told Plaintiff she could only re-apply "once your issues with Cecil County Department of Social Services are resolved to our mutual satisfaction." (This letter is attached and incorporated herewith as **EXHIBIT B**).

32.     Following the settlement agreement of January 21, 2010, all CPS allegations had been Ruled Out and expunged, and no unresolved issues regarding any further investigations existed between Plaintiff Ross and CCDSS.

33.     On information and belief, Defendant Ricciuti, in his capacity as Director of CCDSS, and Defendant Susan Bailey, in her capacity as Assistant Director of Services at CCDSS, were and still are responsible for controlling and directing the policies of CCDSS and the actions of its agents, including all other Defendants.

34.     On information and belief, Defendant Ricciuti has maintained control over a policy of taking agency action against individuals to prevent them from harming the agency by whistle-blowing.

35.     Plaintiffs have suffered from these actions by Defendants and continue to suffer ongoing damage, particularly because Defendants' actions are all capable of repetition and are in fact being repeated in an ongoing manner to deprive Plaintiffs of their rights.

**Count I**
**RELIEF UNDER ACT OF CONGRESS**
**42 U.S.C. § 1983**

36.     Plaintiffs hereby incorporate by reference all foregoing allegations as if set forth fully herein.

37.     All acts alleged herein of Defendants were done under the color and pretense of statutes and regulations of the State of Maryland.

38.     Defendants deprived Plaintiffs' of rights and immunities secured by the Constitution and laws of the United States.

39.     Defendants' actions violated Plaintiffs' rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

40.     Defendants' actions unconstitutionally deprived Plaintiffs' of their rights to privacy and due process.

41.     Defendants' actions caused Plaintiff emotional distress and great loss of personal wealth through legal expenses; deprived Plaintiff Ross of her previous and future employment and her guardianship and parental rights; and violated the peace and safety of Plaintiffs' persons and home through an illegal search and seizure.

42.     As a legal consequence of Defendants' actions, and in accordance with the provision of

42 U.S.C. § 1983, Plaintiffs are entitled to recover damages.

43.     Plaintiffs have suffered and continue to suffer ongoing and irreparable harm from Defendants' actions, are under threat of future, repeated conduct from Defendants, and are therefore entitled to injunctive and declaratory relief.

**Count II**
**VIOLATION OF THE FOURTH AMENDMENT**
**OF THE UNITED STATES CONSTITUTION**
**PRIVACY**

44.     Plaintiffs hereby incorporate by reference all foregoing allegations as if set forth fully herein.

45.     Defendants invaded Plaintiffs' privacy by violating their reasonable expectation of privacy.

46.     Plaintiffs had a reasonable expectation of privacy in Plaintiff Ross's home. Society readily accepts that the home is protected as private and should be safe from intrusion.

47.     Defendants' agents, namely Defendants Klesius, Sutton, Cotton, and Compton, entered Plaintiff Ross's home without valid consent, a warrant, exigent circumstances, or probable cause that the children were in immediate danger of serious injury, and removed the children.

48.     Defendants' entry was an unreasonable intrusion into Plaintiff Ross's home and an invasion of Plaintiffs' privacy in violation of the Fourth Amendment.

49.     As a result of Defendants' policies and actions, Plaintiffs are suffering irreparable harm for which there is no adequate remedy at law.

50.     As a legal consequence of Defendants' violation of Plaintiffs' Fourth Amendment rights, as alleged above, Plaintiffs have suffered and continues to suffer ongoing and irreparable harm, and is also under threat of future, repeated conduct from Defendants, and is entitled to injunctive and declaratory relief.

**Count III**
**VIOLATION OF THE FOURTEENTH AMENDMENT**
**OF THE UNITED STATES CONSTITUTION, AND**
**VIOLATION OF ARTICLE 24**
**OF THE MARYLAND DECLARATION OF RIGHTS**
**PROCEDURAL DUE PROCESS**

51.     Plaintiffs hereby incorporate by reference all foregoing allegations as if set forth fully

herein.

52.    Plaintiff Ross had a procedural due process expectation that Defendants would send notice, initiate an investigation, and receive evidence of abuse or immediate danger to a foster child before removing the children from Plaintiff Ross's home.

53.    Defendants and their agents, Defendants Klesius, Sutton, Cotton, and Compton, violated Plaintiff Ross's right to procedural due process under the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights by entering Plaintiff Ross's house and removing the children, including Plaintiff K.R., without sending prior notice and without evidence of abuse or immediate danger to a foster child.

54.    Plaintiff K.R. had a procedural due process expectation that Defendants would send notice and receive evidence of abuse or immediate danger to her before removing her from Plaintiff Ross's full legal care, custody, and control.

55.    Defendants and their agents Mary Klesius, Rebecca Sutton, LaTonya Cotton, and Kim Compton, violated Plaintiff K.R.'s right to procedural due process under the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights by removing Plaintiff K.R. from Plaintiff Ross's home when Plaintiff K.R. was a minor child in pre-adoptive status under Plaintiff Ross's full legal care, custody and control, without Plaintiff Ross's consent, without a warrant, and without evidence that Plaintiff K.R. was being abused or was in immediate danger of serious harm.

56.    Defendant Helen Murray-Miller violated Plaintiff Ross's right to procedural due process under the Fourteenth Amendment to the United States Constitution by knowingly participating in the communication of false and highly offensive information about Plaintiff Ross to The Arc that deprived Plaintiff of the property right to be considered as an application for a private foster care license.

57.    As a result of Defendants' policies and actions, Plaintiffs are suffering irreparable harm for which there is no adequate remedy at law.

58.    As a legal consequence of Defendants' violation of Plaintiffs' Fourteenth Amendment rights, as alleged above, Plaintiffs have suffered and continue to suffer ongoing and irreparable harm, are under threat of future, repeated conduct from Defendants, and are therefore entitled to injunctive and declaratory relief.

**Count IV**
**VIOLATION OF THE FOURTEENTH AMENDMENT**
**OF THE UNITED STATES CONSTITUTION, AND**
**VIOLATION OF ARTICLE 24**
**OF THE MARYLAND DECLARATION OF RIGHTS**
**SUBSTANTIVE DUE PROCESS: PARENTAL RIGHTS**

59.     Plaintiffs hereby incorporate by reference all foregoing allegations as if set forth fully herein.

60.     Plaintiff Ross had a protected liberty interest in her relationship with Plaintiff K.R. because, at the time of the removal of Plaintiff K.R. on August 15, 2008,

     a.     Plaintiff K.R. was in a pre-adoptive relationship with Plaintiff Ross;

     b.     CCDSS and Defendant agents of CCDSS had already consented to Plaintiff Ross's adoption petition, by filing a written notice of consent with Cecil County Circuit Court on July 31, 2008;

     c.     Plaintiff K.R.'s natural parents' rights had already been terminated by court order;

     d.     Plaintiff K.R. had established a strong familial bond with Plaintiff Ross by living with Plaintiff Ross since March 2007, at approximately one (1) month of age, just after Plaintiff K.R. was born on February 17, 2007;

     e.     The court hearing to finalize Plaintiff K.R.'s adoption by Plaintiff Ross had already been set for August 20, 2008, just three (3) business days later; and

     f.     CCDSS and Defendant agents returned Plaintiff K.R. to Plaintiff Ross's possession before the August 20, 2008 hearing date.

61.     Defendants and their agents, Defendants Klesius, Sutton, Cotton, and Compton, violated Plaintiff Ross's substantive due process parental rights under the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights by removing Plaintiff K.R. from Plaintiff Ross's home when Plaintiff K.R. was a minor child in pre-adoptive status under Plaintiff Ross's full legal care, custody and control, without Plaintiff Ross's consent, without a warrant, without sending notice, and without evidence that Plaintiff K.R. was being abused or was in immediate danger of serious harm.

62.     As a result of Defendants' policies and actions, Plaintiffs are suffering irreparable harm for which there is no adequate remedy at law.

63.     Furthermore, as a direct and proximate result of Defendant Klesius's actions in  initiating,

authorizing, supervising, and directing the removal of Plaintiff Ross's minor child, and of Defendants Sutton, Cotton, and Compton's actions in entering Plaintiff Ross's home and removing Plaintiff K.R., Plaintiff Ross is suffering emotional distress and great loss of personal wealth through legal expenses and depravation of future employment.

64.    As a legal consequence of Defendant Klesius's actions, as alleged herein, Plaintiff Ross is entitled to recover damages.

65.    As a legal consequence of Defendants' violation of Plaintiff Ross's Fourteenth Amendment rights, as alleged above, Plaintiff Ross has suffered and continues to suffer ongoing and irreparable harm, is under a threat of future, repeated conduct from Defendants, and is therefore entitled to injunctive and declaratory relief.

**Count V**
**MARYLAND TORT CLAIMS ACT**
**BREACH OF CONFIDENCE**

66.    Plaintiffs hereby incorporate by reference all foregoing allegations as if set forth fully herein.

67.    In accordance with the requirements and allowances of the Maryland Tort Claims Act, Maryland Code, State Government Article §§ 12-101, *et seq.*, Plaintiff Ross herein files suit and claim against Defendants.

68.    The information regarding the investigations into Plaintiff Ross and her relationship with CCDSS is substantially confidential in nature.

69.    The substantially confidential nature of this information was made clear to Defendant Klesius by Plaintiff Ross, her attorney, the terms of the settlement agreement, and the instructions and order of the Court.

70.    Defendant Klesius and CCDSS had the opportunity to reject the terms of the settlement agreement.

71.    CCDSS and its agents, including Defendants, voluntarily accepted the terms of the agreement that the information regarding Plaintiff Ross would remain confidential.

72.    Defendants disclosed the confidential information in breach of confidence.

73.    Defendant Helen Murray-Miller, acting as an agent of both MDDHR and the CCDSS foster care authority, communicated to The Arc the false information, supplied to her by CCDSS,

that Plaintiff Ross still had "unresolved issues" with CCDSS that would prevent The Arc from granting Plaintiff Ross a private license.

74.     The Arc used the confidential information improperly disclosed by CCDSS and its agents to deny Plaintiff Ross a home study.

75.     The disclosure of this information was the proximate cause for the denial.

76.     The disclosure of this information has caused Plaintiff Ross emotional distress, substantial investment in legal battles, and the loss of future prospects for employment.

77.     As a direct and proximate result of Defendants' policies and actions, Plaintiff Ross is suffering emotional distress, great loss of personal wealth through legal expenses, and depravation of future employment.

78.     As a legal consequence of Defendants' actions, as alleged herein, Plaintiff Ross is entitled to recover damages.

79.     As a legal consequence of Defendants' actions, as alleged above, Plaintiff Ross has suffered and continues to suffer ongoing and irreparable harm, is under a threat of future, repeated conduct from Defendants, and is therefore entitled to injunctive and declaratory relief.

## Count VI
## MARYLAND TORT CLAIMS ACT
## NEGLIGENCE

80.     Plaintiffs hereby incorporate by reference all foregoing allegations as if set forth fully herein.

81.     In accordance with the requirements and allowances of the Maryland Tort Claims Act, Maryland Code, State Government Article §§ 12-101, *et seq*., Plaintiffs herein file suit and claim against Defendants.

82.     Defendants had a duty to Plaintiffs to act in a manner that ensured Plaintiffs' Fourth and Fourteenth Amendment rights to privacy and due process were not violated and to ensure that Plaintiff Ross's Fourteenth Amendment parental rights were not infringed upon.

83.     Defendants and their agents, Defendants Klesius, Sutton, Cotton, and Compton, breached this duty when they entered onto Plaintiff Ross's property and intruded into Plaintiff Ross's home without valid consent, a warrant, or any probable cause or evidence that the children were being abused or immediate danger of serious harm, thereby violating Plaintiffs' Fourth Amendment right to privacy.

84.     Defendant Linkous and other Defendants breached this duty on or about August 15, 2008, when Defendant Linkous allegedly took an anonymous tip call from a prior foster child of Plaintiff Ross, and when Defendant Linkous thereafter drove over two (2) hours into the Commonwealth of Pennsylvania in order to allegedly interview this foster child and call in to CCDSS details of the alleged "neglect" intended to advance the scheme of Defendants to retaliate against Plaintiff Ross by finding her in neglect and thereby removing her foster care license.

85.     Defendants and their agents, Defendants Klesius, Sutton, Cotton, and Compton, breached this duty when they violated Plaintiff Ross's right to procedural due process under the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights by entering Plaintiff Ross's house and removing the children, including Plaintiff K.R., without valid consent, without a warrant, without probable cause, without sending notice, and without evidence of abuse or immediate danger to a foster child.

86.     Defendants and their agents, Defendants Klesius, Sutton, Cotton, and Compton, breached this duty when they violated Plaintiff K.R.'s procedural due process rights under the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights by removing Plaintiff K.R. from Plaintiff Ross's home when Plaintiff K.R. was a minor child in pre-adoptive status under Plaintiff Ross's full legal care, custody and control, and without Plaintiff Ross's consent, without a warrant, and without evidence that Plaintiff K.R. was being abused or was in immediate danger of serious harm.

87.     Defendants and their agents, Defendants Klesius, Sutton, Cotton, and Compton, breached this duty when they violated Plaintiff Ross's substantive due process parental rights under the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights by removing Plaintiff K.R. from Plaintiff Ross's home when Plaintiff K.R. was a minor child in pre-adoptive status under Plaintiff Ross's full legal care, custody and control, without Plaintiff Ross's consent, without a warrant, without sending notice, and without evidence that Plaintiff K.R. was being abused or was in immediate danger of serious harm.

88.     As a direct and proximate result of Defendants' policies and actions, through their agents, Plaintiff Ross is suffering emotional distress, great loss of personal wealth through legal expenses, and depravation of future employment.

89.     As a legal consequence of Defendants' actions, as alleged herein, Plaintiff Ross is entitled

to recover damages.

90.     As a legal consequence of Defendants' actions, as alleged above, Plaintiffs have suffered and continue to suffer ongoing and irreparable harm, and are under a threat of future, repeated conduct from Defendants, and are therefore entitled to injunctive and declaratory relief.

**Count VII**
**MARYLAND TORT CLAIMS ACT**
**<u>FALSE LIGHT</u>**

91.     Plaintiffs hereby incorporate by reference all foregoing allegations as if set forth fully herein.

92.     In accordance with the requirements and allowances of the Maryland Tort Claims Act, Maryland Code, State Government Article §§ 12-101, *et seq*., Plaintiff Ross herein files suit and claim against Defendants.

93.     Defendants cast Plaintiff Ross in a disparaging false light by allowing agents of CCDSS to publicize confidential, false, and highly offensive information regarding Plaintiff Ross by conveying that information to The Arc sometime before March 18, 2010.

94.     On information and belief, sometime before March 18, 2010, Defendant Helen Murray-Miller, acting as an agent of both MDDHR and the CCDSS foster care authority, communicated to The Arc the false information, supplied to her by CCDSS, that Plaintiff Ross still had "unresolved issues" with CCDSS that would prevent The Arc from granting Plaintiff Ross a private license.

95.     Defendant agent(s) of CCDSS and Defendant Helen Murray-Miller knew the information was false and/or acted with reckless disregard as to whether it was false, because they failed to call or contact Plaintiff Ross to confirm or deny the truth of the information before passing the information along to The Arc.

96.     The information was publicized by communicating it to The Arc, which is a large, regional organization.

97.     The conveyance of the information led The Arc to conclude that there were unresolved issues between Plaintiff Ross and CCDSS, which consequently placed Plaintiff Ross in a false light, since there were no such unresolved issues at that time.

98.     An allegation that mysterious "unresolved issues" exist between an experienced and competent foster care provider, such as Plaintiff Ross, and a government social services

department such that a private foster care agency denies even a standard home study would be highly offensive to a reasonable person.

99. As a direct and proximate result of Defendants' policies and actions, Plaintiff Ross is suffering emotional distress, great loss of personal wealth through legal expenses and depravation of future employment.

100. As a legal consequence of Defendants' actions, as alleged herein, Plaintiff Ross is entitled to recover damages.

101. As a legal consequence of Defendants' actions, as alleged above, Plaintiff Ross has suffered and continues to suffer ongoing and irreparable harm, is under a threat of future, repeated conduct from Defendants, and is therefore entitled to injunctive and declaratory relief.

**Count VIII**
**MARYLAND TORT CLAIMS ACT**
**<u>DEFAMATION</u>**

102. Plaintiffs hereby incorporate by reference all foregoing allegations as if set forth fully herein.

103. In accordance with the requirements and allowances of the Maryland Tort Claims Act, Maryland Code, State Government Article §§ 12-101, *et seq.*, Plaintiff Ross herein files suit and claim against Defendants.

104. On information and belief, sometime before March 18, 2010, Defendant Helen Murray-Miller, acting as an agent of both MDDHR and the CCDSS foster care authority, communicated to The Arc the false information, supplied to her by CCDSS, that Plaintiff Ross still had "unresolved issues" with CCDSS that would prevent The Arc from granting Plaintiff Ross a private license.

105. This statement of fact was specifically about Plaintiff Ross and the nature of her relationship with CCDSS.

106. This statement of fact was conveyed to another, namely, The Arc.

107. This statement of fact was false since Plaintiff Ross did not have any unresolved issues with CCDSS.

108. This false statement of fact served to reflect negatively on Plaintiff Ross and served to present harm to Plaintiff Ross's reputation.

109. As a direct and proximate result of Defendants' policies and actions, Plaintiff Ross is

suffering emotional distress, great loss of personal wealth through legal expenses, and depravation of future employment.

110.    As a legal consequence of Defendants' actions, as alleged herein, Plaintiff Ross is entitled to recover damages.

111.    As a legal consequence of Defendants' actions, as alleged above, Plaintiff has suffered and continues to suffer ongoing and irreparable harm, is under a threat of future, repeated conduct from Defendants, and is therefore entitled to injunctive and declaratory relief.

**Count IX**
**BREACH OF CONTRACT**

112.    Plaintiffs hereby incorporate by reference all foregoing allegations as if set forth fully herein.

113.    On or about January 21, 2010, Defendants entered into a contract with Plaintiff Ross in the form of a settlement agreement, signed by CCDSS's counsel, which required them to maintain confidentiality regarding all of its dealings with Plaintiff and not to convey any negative or disparaging statements regarding Plaintiff.

114.    Sometime following this contract and, on information and belief, sometime before March 18, 2010, Defendant Helen Murray-Miller, acting as an agent of both MDDHR and the CCDSS foster care authority, communicated to The Arc the false information, supplied to her by CCDSS, that Plaintiff Ross still had "unresolved issues" with CCDSS that would prevent The Arc from granting Plaintiff Ross a private license.

115.    Plaintiff was harmed by this breach of contract.

116.    CCDSS and its agents entered also into a contract with Plaintiff through the Maryland "Foster Parents Bill of Rights."

117.    Defendant Ricciuti allowed CCDSS to breach this contract.

118.    Plaintiff was harmed by this breach of contract

119.    As a direct and proximate result of Defendants' policies and actions, Plaintiff is suffering emotional distress, great loss of personal wealth through legal expenses, and depravation of future employment.

120.    As a legal consequence of Defendants' actions, as alleged herein, Plaintiff Ross is entitled to recover damages.

121.    As a legal consequence of Defendants' actions, as alleged above, Plaintiff Ross has suffered and continues to suffer ongoing and irreparable harm and is entitled to injunctive and declaratory relief.

### Count X
### VIOLATION OF FIRST AMENDMENT
### OF THE UNITED STATES CONSTITUTION
### FREEDOM OF SPEECH

122.    Plaintiffs hereby incorporate by reference all foregoing allegations as if set forth fully herein.

123.    All acts alleged herein of Defendants were done under the color and pretense of statutes and regulations of the State of Maryland.

124.    Defendants' actions of removing Plaintiff Ross's children and promulgating false, confidential, and damaging information against her were in retaliation against Plaintiff Ross's expression of her opinion of the financial conduct of CCDSS that she believed was illegal.

125.    Defendant Klesius and Defendants knew that Plaintiff Ross was scheduled to enter the position of President of the Cecil County Foster Care Association on August 15, 2008, thereby gaining access to the financial records of the organization, including those records detailing activity of Defendant Klesius that Plaintiff Ross had alleged was illegal.

126.    Defendant Klesius and Defendants took action on August 15, 2008, to remove Plaintiff Ross's children and begin the process to suspend her license.

127.    Defendants took this action in direct retaliation for Plaintiff Ross's expressed opinion regarding Defendant Klesius's financial stewardship and in order to chill her speech.

128.    Defendant's actions and policies of squelching expression like Plaintiff's were not narrowly tailored to serve any compelling state interest, wer not content-neutral, and were not reasonable time, place, or manner restrictions.

129.    Defendants' policies and actions towards Plaintiff Ross's expression and similar expression were unconstitutional prior restraints on speech because they afforded county officials such as Defendants Ricciuti, Klesius, and Siciliano, broad and unbridled discretion, and because they did not contain any procedural safeguards necessary for a speech-related permitting scheme.

130.    Defendants' policies and actions were unconstitutionally overbroad and had a chilling effect on the free speech rights of Plaintiff Ross and others similarly situated but not before this

Court.

131.    As a legal consequence of Defendants' actions, as alleged herein, Plaintiff Ross has experienced the chilling of her speech and retaliation for her speech, and is entitled to recover damages.

132.    As a legal consequence of Defendants' actions, as alleged above, Plaintiff Ross has suffered and continues to suffer ongoing and irreparable harm and is entitled to injunctive and declaratory relief.

**WHEREFORE**, Plaintiffs request this Honorable Court enter judgment against Defendants as follows:

A.  Adjudge, decree and declare the rights and other legal relations of the parties to the subject matter and claims in controversy in order that such declarations shall have the force and effect of final judgment and that the Court retain jurisdiction of this matter for the purpose of enforcing the Court's Orders;

B.  Pursuant to 28 U.S.C. § 2201, declare that the Defendants' laws, policies and practices, as alleged above, violate the Fourth and Fourteenth Amendments to the United States Constitution;

C.  Pursuant to 28 U.S.C. § 2202, Fed. R. Civ. P. 65, and 42 U.S.C. § 1983, preliminarily and permanently enjoin all Defendants from continuing their unconstitutional actions and enforcing their unconstitutional policies against Plaintiff and others similarly situated;

D.  Pursuant to 42 U.S.C. § 1988 and other applicable law, award Plaintiffs their costs and expenses incurred in bringing this action, including reasonable attorneys' fees;

E.  Pursuant to the Maryland Tort Claims Act, Maryland Code, State Government Article §§ 12-101, *et seq*., award Plaintiffs compensatory damages against Defendants sued in their individual capacities, for the damages suffered in violation of federal and state law in an amount to be determined by a jury; and

F.  Pursuant to the Maryland Tort Claims Act, Maryland Code, State Government Article §§ 12-101, *et seq*., award Plaintiffs punitive damages as against Defendants sued in their individual capacities;

G.  In the ALTERNATIVE, if the Court finds insufficient settled precedent in

Maryland to decide any of the above counts, certify said count to the Maryland Court of Appeals for resolution; and

H. Grant such other and further relief as the Court deems equitable, just and proper.

Respectfully Submitted,

THE COX LAW CENTER, LLC


BY: __/S/_____
        Daniel L. Cox, Esquire
        The Cox Law Center, LLC
        104 North Court Street
        Frederick, Maryland 21701
        Telephone: 301.631.9454
        Facsimile: 301.631.9358
        Email: dcox@coxlawcenter.com
        *Attorney for the Plaintiff*

## VERIFICATION

I DO HEREBY AFFIRM, CERTIFY AND VERIFY that the foregoing Second Amended Complaint is true and accurate to the best of my knowledge and belief.


       __/S/_____
       Betsy Ross, Plaintiff


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of December, 2011, a true and accurate copy of the foregoing Second Amended Complaint was served, via electronic mail, upon Bradley J. Neitzel, Assistant Attorney General, 311 West Saratoga Street, Suite 1015, Baltimore, Maryland 21201, bneitzel@oag.state.md.us.


       _____/s/_____
       Daniel L. Cox