IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**BETSY ROSS, *et al*.,**                     \*

   Plaintiffs,                     \*

  v.                     \*          Civil Action No. 1:11-CV-00181-WDQ

**CECIL COUNTY DEPARTMENT,**                     \*
**OF SOCIAL SERVICES, *et al*.,**
               \*
   Defendants.
               \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND
AMENDED COMPLAINT OR FOR SUMMARY JUDGMENT**

  Defendants, through counsel, submit this Memorandum in support of their Motion to Dismiss Second Amended Complaint or for Summary Judgment.

## INTRODUCTION

  Plaintiffs' Second Amended Complaint against Defendants claims damages and injunctive relief as a result of actions by employees of Maryland's Cecil County Department of Social Services ("CCDSS") and Department of Human Resources ("DHR").  Plaintiffs' claims of neglect are based on the removal of foster children from the home of Plaintiff Betsy Ross; Ms. Ross's additional claims arise from the disclosure of allegedly defamatory and confidential information.  For the reasons set forth below, the Court should dismiss the Second Amended Complaint or grant Defendants summary judgment.

## FACTS AS ALLEGED IN SECOND AMENDED COMPLAINT[1]

Plaintiff Betsy Ross is a former president of the Cecil County Foster Parent Association and former foster parent.  2d Am. Compl. ¶ 2.  Plaintiff K.R. is the "minor adoptee-child" of Betsy Ross.  2d Am. Compl. ¶ 22.  Defendant Nicholas Ricciuti is the Director of CCDSS, and is sued in his official capacity.  2d Am. Compl. ¶ 3.  Defendant Mary Klesius was the CCDSS Supervisor of foster care services and is sued both in her official and individual capacity.  2d Am. Compl. ¶ 4.  Defendant LaTonya Cotton is a social service worker with CCDSS and is sued in her official and individual capacity.  2d Am. Compl. ¶ 5. Defendant Rebecca Sutton is a social service worker with CCDSS and is sued in her official and individual capacity.  2d Am. Compl. ¶ 6. Defendant Kim Compton is a social service worker with CCDSS and is sued in her official and individual capacity.  2d Am. Compl. ¶ 7.  Defendant Tina Linkous is the Adoption Coordinator for CCDSS and is sued in her official and individual capacity.  2d Am. Compl. ¶ 8.  Defendant Susan Bailey is the Assistant Director for CCDSS and is sued in her official and individual capacity.  2d Am. Compl. ¶ 9.  Defendant Barbara Siciliano is a social service worker and supervisor at CCDSS and is sued in her official and individual capacity.  2d Am. Compl. ¶ 10.  Defendant Helen Murray-Miller is a foster care licensing coordinator for the Maryland Department of Human

---

[1] The allegations in the Second Amended Complaint are assumed to be true for purposes of the Motion to Dismiss only.

Resources, Social Services Department and is sued in her official and individual capacity.  2d Am. Compl. ¶ 11.

   In or around July, 2008, Plaintiff Ross discovered that the CCDSS was placing unspent State funds into the CCFPA checking account and managing these funds through the oversight and control of Mary Klesius; Ms Ross began taking steps to report this allegedly unlawful practice.  2d Am. Compl. ¶ 14.  On or about August 15, 2008, at 1:30 PM, Ms. Klesius informed Plaintiff Ross that CCDSS was removing her foster care children and that she would be further investigated.  2d Am. Compl. ¶ 15.  On or about August 15, 2008, CCDSS commenced an investigation into Plaintiff Ross.  2d Am. Compl. ¶ 17.  On or about August 15, 2008, Defendant Tina Linkous reported allegations of neglect against Plaintiff Ross.  2d Am. Compl.  ¶ 18.  On or about August 15, 2008, Defendants Linkous and Klesius decided, based on allegations of neglect, that Plaintiff Ross's foster children must be removed from her home.  2d Am. Compl. 20.  On or about August 15, 2008, at 4:30 PM, Defendants Sutton, Cotton, and Compton removed foster children J.C., J.C., K.C. and I.K.D. from Plaintiff's care and control, as well as Plaintiff K.R..  2d Am. Compl. ¶¶ 21, 22.  On or about September 28, 2009, CCDSS replaced K.R. in Plaintiff Ross's home and set another adoption hearing for October 15, 2008.  2d Am. Compl. ¶ 26.

   On or about January 21, 2010, a settlement agreement was reached between CCDSS and Plaintiff Ross, which:  1) ruled out the allegations of neglect; 2) required CCDSS to maintain complete confidentiality regarding the terms of the settlement agreement; and 3)

required CCDSS to desist from making any negative statements about Plaintiff Ross.  2d Am. Compl. ¶ 27.  At that time, because of "irreconcilable differences," Plaintiff Ross offered to voluntarily relinquish her state foster care home license because her application to become a privately certified and licensed foster care provider was pending with The Arc - Northern Chesapeake Region ("The Arc"), a private foster-care agency.  2d Am. Compl. ¶ 28.

Sometime before March 18, 2010, Defendant Murray-Miller, acting as an agent of "MDDHR and the CCDSS foster care authority," communicated to The Arc false information that Plaintiff Ross and CCDSS still had "unresolved issues" that would prevent The Arc from granting Plaintiff a private license at that time.  2d Am. Compl. ¶ 29.  On or about March 18, 2010, The Arc sent Plaintiff Ross a letter stating that "following consultation with our licensed monitor from Department of Human Resources [the] unresolved and high profile nature of your current situation with several entities determines that it is not a good time to proceed with a home study," and that Plaintiff Ross could attempt the process again, "once your issue with Cecil County Department of Social Services are resolved to our mutual satisfaction."  2d Am. Compl. ¶¶ 30, 31.  Following the settlement agreement of January 21, 2010, "no unresolved issues regarding any further investigations existed between Plaintiff Ross and CCDSS."  2d Am. Compl. ¶ 32.

Defendants Ricciuti and Bailey are responsible for controlling and directing the policies of CCDSS.  2d Am. Compl. ¶ 33.  Defendant Ricciuti has "maintained control over a

policy of taking agency action against individuals to prevent them from harming the agency by whistleblowing."  2d Am. Compl. ¶ 34.

I.      **THE FOURTH AMENDMENT CLAIM MUST BE DISMISSED BECAUSE DEFENDANTS' ENTRY INTO PLAINTIFF'S HOME TO RETRIEVE FOSTER CHILDREN BASED ON A REPORT OF NEGLECT WAS NOT UNREASONABLE UNDER THE FOURTH AMENDMENT AND BECAUSE THEY HAVE QUALIFIED IMMUNITY.**

In her Fourth Amendment claim, Plaintiff Ross asserts that the entry into her home to retrieve the children was "an unreasonable intrusion into [her] home and an invasion of Plaintiffs' privacy."  2d Am. Compl. ¶ 48.  It should first be noted that she admits that four of the five children in question are foster children.  2d Am. Compl. ¶ 21.  She admits that the fifth child, Plaintiff K.R. was a "minor child in pre-adoptive status."  2d Am. Compl. ¶ 55.  Plaintiff Ross seeks to distinguish the status of Plaintiff K.R. by describing K.R. as her "adoptee-child" and one over whom she "had full legal custody, care and control."  2d Am. Compl. ¶ 22.  This conclusory statement of K.R.'s legal status, without any factual support, is false.  This child was, in fact, also a foster child at the time of her removal.  In a letter to a Maryland state legislator, Plaintiff Ross admitted as much, treating all five children as foster children and herself as a foster parent regarding the five children and only distinguishing K.R. as "in pre-adopt status." Ex. A.

That all the children removed were nothing more than foster children is confirmed by Ms. Ross herself when she acknowledged and agreed in writing that "custody and control of

the child[ren] at all times remains with the Department." Ex. B.  The status of the children is also confirmed by a letter concerning the removal of the children, written by Kristen Puican, identified as Resource Home Coordinator, to Sherlema Quick, the Out of Home Program Manager for DHR, in which the five children are referred to as "foster children." Ex. C.

The status of the children as foster children is significant in that, as a foster parent, Ms. Ross's rights over her foster children were severely limited, to a status of far less than a custodial parent.  Under Maryland law, a "[f]oster parents' sole responsibilities are defined as part of a contractual agreement with the agency; consequently, the rights and responsibilities of a foster parent are significantly less than those of a guardian." *In re Adoption/Guardianship No. 3155*, 103 Md. App. 300, 306 (1995).  Ms. Ross's status as a mere foster parent is of utmost importance, because the Fourth Circuit and several other courts have examined the Fourth Amendment's application to entry into a foster home and concluded that such an entry did not violate the Fourth Amendment.

The children status as foster children and Ms. Ross's status as a foster parent are also significant in light of established precedent.  In *Wildauer v. Frederick County*, the Fourth Circuit examined a case in which four county officials went to a foster home to retrieve four foster children.  993 F.2d 369 (4th Cir. 1993).  In deciding that entry into the home did not violate the Fourth Amendment, the Court recognized that it must "balance the government's need to search with the invasion endured by the plaintiff." *Id*. at 372.  The Court also emphasized that "investigative home visits by social workers are not subject to the same

scrutiny as searches in the criminal context." The Court ultimately concluded that "[b]ecause the state's interest in examining the neglected children outweighed any attenuated privacy interest of Wildauer," there had been no Fourth Amendment privacy violation. *Id*. at 373.  So too, in this case did the state's interest in entering Ms. Ross's home outweigh any privacy interest.

As the Second Amended Complaint admits, Defendants entered the home of Ms. Ross to remove foster children based on an allegation of neglect of children of whom she did not have custody.   2d Am. Compl. ¶ 20.   Moreover, contrary to Plaintiffs' unsupported conclusory statement that Defendants removed the children "without any indication or belief of serious immediate danger," Defendants removed the children based on allegations indicating "that Ms. Ross was leaving the children unattended in the family pool, and one child almost drowned, Ms. Ross leaving an 8-year-old child to care for her younger siblings as well as other foster care children, a Foster Care child being exposed to sexual behaviors of Ms. Ross's teenage daughter, a foster care child falling down the stairs and another child falling off a couch." Ex.D.  These allegations indicated that the children could be in serious danger.  This possible serious danger to foster children, combined with the fact that the state retained custody of foster children, reveals a profound interest in entering a foster home. And this interest outweighs the privacy interest of Ms. Ross, considering that she did not have custody of the children in question.   Because the interest in entering the home

outweighed Ms. Ross's privacy interest, the search was reasonable and did not violate her Fourth Amendment rights.  The claim must be dismissed.

Even if their conduct were deemed to have violated the Fourth Amendment, Defendants nevertheless have qualified immunity to such a claim.  As state actors, Defendants are immune from § 1983 claims for damages if their actions did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *see also Weller v. Dep't of Social Services for the City of Baltimore*, 901 F.2d 387, 398 (4th Cir. 1990) (qualified immunity applies to individual defendants who removed child from parents' custody).  The Supreme Court has further explained that "clearly established" means that "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011).  There is no "clearly established statutory or constitutional right" to not have the state enter one's home to remove children who are not one's own, based on allegations of neglect, let alone potentially dangerous neglect.  Nor can it be credibly maintained that such a right "beyond debate."  Accordingly, Defendants are immune from any claim for damages based on a violation of the Fourth Amendment and the claim must be dismissed.

II.     **THE FOURTEENTH AMENDMENT CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFF ROSS DID NOT HAVE A CONSTITUTIONALLY PROTECTED INTEREST IN THE CONTINUATION OF A RELATIONSHIP WITH HER FOSTER CHILDREN.**

The Second Amended Complaint alleges a violation of due process under the Fourteenth Amendment based on the Defendants' entry to Ms. Ross's house and removal of the child K.R.  This allegation fails because the Fourth Circuit has already rejected such a claim.

It is established that "'[i]n order to claim entitlement to the protections of the due process clause . . . a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest, and that he has been 'deprived' of that protected interest by some form of 'state action.'"  *Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1990) (quoting *Stone v. University of Maryland Medical Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)).  In *Wildauer*, the Fourth Circuit made clear that foster parents do not have a due process claim when their foster children are removed because foster parents have no protected interest in maintaining a relationship with their foster children.  993 F.2d at 373.  And other circuits are in agreement that foster parents do not have the same constitutional rights that natural parents do when it comes to their foster children.  *See Renfro v. Cuyahoga Cnty. Dep't of Hum. Servs.*, 884 F.2d 943, 944 (6th Cir. 1989) (holding that foster parents' relationship with foster child did not involve a liberty interest); *Kyees v. Cnty. Dep't of Public Welfare*, 600 F.2d 693, 695, 697 (7th Cir. 1979) (per curiam) (same); *Drummond v. Fulton Cnty. Dep't of Pub. Welfare*, 563

F.2d 1200, 1207 (5th Cir. 1977) (en banc), *cert. denied*, 437 U.S. 910 (1978) (same).  The Fourteenth Amendment due process claim must be dismissed.

The Article 24 due process claim fares no better.  Such due process claims are ordinarily analyzed in *pari materia* with claims under the Fourteenth Amendment, although Article 24 "can be interpreted more broadly."  *Smith v. Bortner*, 193 Md. App. 534, 553 (2010) (citing *Koshko v. Haining*, 398 Md. 404, 443-44 (2007)).  The Maryland Court of Appeals has never, however, interpreted Article 24 to grant more extensive rights to foster parents than does the Fourteenth Amendment.

The Fourteenth Amendment claim based on a violation of Ms. Ross's supposed parental rights also must be dismissed.  Such a claim again is merely a due process claim, a claim which must be based on the deprivation of a protected interest, namely the right of parents to make fundamental decisions about the care and custody of their children.  *Troxel v. Granville*, 530 U.S. 57 (2000).  Although the inquiry might be different if at the time K.R. had been the biological or adopted child of Ms. Ross, the child was not.  Nor did Ms. Ross at the time even have custody of K.R.  As already noted, she therefore had no protected interest as a parent over a foster child of whom she did not have custody. *Wildauer* at 373; *See Smith v. Org. of Foster Families for Equal. & Reform*, 431 U.S. 816, 845, (1977) (drawing distinctions between natural families and foster families and asserting that liberty interests of foster families are created by state law).  The Fourteenth Amendment parental rights claims must also be dismissed.  Additionally, as with the Fourth Amendment claim, the Defendants

also have qualified immunity to any Fourteenth Amendment claims for damages, as they did not violate any "clearly established" rights of Plaintiff Ross.

## III.    THE BREACH OF CONFIDENCE CLAIM MUST BE DISMISSED BECAUSE NO CONFIDENTIAL INFORMATION WAS REVEALED AND BECAUSE DEFENDANT MURRAY-MILLER OWED NO DUTY TO PLAINTIFF ROSS.

As the basis for this claim, the Second Amended Complaint asserts that "CCDSS and its agents, including Defendants, voluntarily accepted the terms of the agreement that the information regarding Plaintiff would remain confidential.   Defendants disclosed the confidential information in breach of confidence."  2d Am. Compl. ¶¶ 72-73.  It should first be noted that no Maryland appellate court has ever explicitly recognized the tort of breach of confidence.  And it is unlikely that any Maryland appellate court would recognize the tort in this context, which is simply a restatement of a breach of contract claim in that the alleged duty arises out of a written agreement between the parties.  *See Kann v. Kann*, 344 Md. 689, 712 (1997) (stating that the  Court has "recognized a new cause of action when there was no existing legal remedy directed at the problem").  Even if such a tort were recognized, there has been no breach of confidence.

The Second Amended Complaint alleges that the settlement agreement made confidential the information imparted to The Arc, namely that Plaintiff Ross had "unresolved issues".  A mere glance at the agreement reveals that it does no such thing.  The agreement, attached as Exhibit A to the Second Amended Complaint, states that "the terms of this settlement agreement shall remain confidential."  It refers to nothing else as confidential.

Consequently, the only information imparted—that there were "unresolved issues"—was not confidential in that it had nothing to do with the terms of the agreement.  Therefore, the alleged breach was nothing of the sort.

Even if the information imparted to The Arc were covered by the agreement, there would still not be a breach of confidence, as it is clear that the person who imparted the information was not bound by the agreement and therefore owed no duty of confidence to Plaintiff Ross.  The Second Amended Complaint makes plain that the person who disclosed the information is Defendant Helen Murray-Miller. *See* 2d Am. Compl. ¶ 29 (stating that "sometime before March 18, 2010, Defendant Helen Murray-Miller communicated to The Arc the false information that Plaintiff and CCDSS still had unresolved issues that would prevent The Arc from granting Plaintiff a private license").  Elsewhere, the Second Amended Complaint refers to Ms. Murray-Miller as "a foster care licensing coordinator for the Maryland Department of Human Resources, Social Services Department." 2d Am. Compl. ¶ 11.  As such, Ms. Murray-Miller is not an employee of CCDSS but an employee of DHR's Social Services Administration.

CCDSS, like other local departments of social services, is a mere unit of DHR at the local level.  *See* Md. Code Ann., Hum. Servs, § 4-205(b) (LexisNexis 2007) ("The [Social Services] Administration shall supervise, direct, and control the activities of the local departments); *In re Adoption No. 2633*, 646 Md. App. 274, 301-302 (1994) ("state law makes clear that a local social services director merely functions as an arm of the SSA in each of

Maryland's counties").  CCDSS is supervised by DHR's Social Services Administration, which is the " the central coordinating and directing agency of all social service activities in the State."  Md. Code Ann., Hum. Servs., § 4-205(a)(1)(LexisNexis 2007).

The Second Amended Complaint does allege that Defendant Murray-Miller is "an agent of both MDDHR and the CCDSS foster care authority."  (Am. Compl. ¶ 11, 29.)  This allegation, however, is false, as revealed not only by the statutory relationship between DHR, SSA and CCDSS, but also by Defendant Murray-Miller's affidavit, which affirms that at the time she was "neither an agent nor an employee of Cecil County Department of Social Services ("CCDSS"), which is a wholly separate entity from OLM. No one who works for CCDSS has any supervisory authority over me."  Aff. Murray-Miller.

Ms. Murray-Miller, an employee of Maryland Social Services Administration and not an employee or agent of CCDSS, is not bound by an agreement of confidentiality that binds CCDSS, and her alleged communication of information is not a breach of any duty of confidentiality created by that agreement.  Accordingly, the breach of confidence claim must be dismissed.

## IV.    THE NEGLIGENCE CLAIM MUST BE DISMISSED BECAUSE DEFENDANTS ARE IMMUNE FROM SUIT.

By statute, Maryland state employees are immune from suits based on negligence. *See* Md. Code Ann., Courts & Jud. Proc. § 5-522(b) (LexisNexis 2006); *see also Ford v. Baltimore City Sheriff's Office*, 149 Md. App. 107, 127 (2002) ("State personnel have

qualified immunity from mere negligence suits"). State officials, however, can be liable if they act with "gross negligence," which occurs "when [an official] inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Barbre v. Pope*, 402 Md. 157, 182 (2007) (quoting *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 635 (1985).[2] Plaintiffs, however, have failed to allege that Defendants Klesius, Sutton, Cotton, and Compton acted with gross negligence. Entering a home based on reports of dangerous neglect to children is not acting as if Plaintiffs' rights did not exist. Moreover, the four Defendants' attached affidavits indicate that, in removing the children from the home, the Defendants were motivated solely by a concern for the safety of the foster children. Affs. Klesius, Compton, Cotton, Larson. Therefore, these four Defendants could not have acted with gross negligence. For these reasons, the negligence claim must be dismissed.

## V.  THE FALSE LIGHT CLAIM MUST BE DISMISSED BECAUSE THE SECOND AMENDED COMPLAINT DOES NOT PLEAD ALL THE REQUIRED ELEMENTS OF SUCH A CLAIM.

Under Maryland law, one can be liable for a claim for false light invasion of privacy if one "gives publicity to a matter concerning another that places the other before the public in

---

[2] State officials can also be liable if they act with malice. Malice is defined as "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Barbre*, 402 Md. at 182. Such conduct, however, is not applicable here, as it entails intent to injure, which would not apply in a negligence claim, which is not an intentional tort.

a false light … if (a) the false light in which the other person was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.". *Ostrzenski v. Seigel*, 177 F.3d 245, 252 (4th Cir. 1999) (quoting *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 513-514 (1995) (quoting Restatement (Second) of Torts § 652E (1977)). The Second Amended Complaint fails to allege at least two of these three elements.

The first requirement, that the matter be publicized, is nowhere alleged in the Second Amended Complaint. It merely alleges that Defendant Helen Murray-Miller communicated to a private foster care association—The Arc—the allegedly false information. The Arc then passed along this allegation to Ms. Ross in a letter. Such a communication falls far short of the required that the alleged false information be "placed before the public" because "disclosure of the private fact must be sufficiently broad such that the fact becomes one of public knowledge…it is not an invasion of privacy to communicate a fact about someone's private life to a single person or even to a small group of people." *Henderson v. Claire's Stores, Inc.*, 607 F. Supp. 2d 725, 733 (D. Md. 2009) (citing *Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 166 (1986). Second, placing a person in the false light of having ambiguous "unresolved issues" does not qualify as "highly offensive to a reasonable person." The false light claim must be dismissed.

**VI.    THE DEFAMATION CLAIM MUST BE DISMISSED BECAUSE THE SECOND AMENDED COMPLAINT DOES NOT PLEAD THE REQUIRED ELEMENTS OF DEFAMATION**

The defamation claim must be dismissed because the Second Amended Complaint does not plead all the required elements of defamation.  The first of these elements is a defamatory statement.  *See Rosenberg v. Helinski*, 328 Md. 664, 675 (1992).  A defamatory statement is a statement that "tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person."  *Offen v. Brenner*, 402 Md. 191, 198-199 (2007).  The alleged statement in question was that Ms. Ross "still had unresolved issues that would prevent The Arc from granting Plaintiff a private license."   2d Am. Compl. ¶ 29.  This ambiguous statement does not begin to meet the definition of a defamatory statement, especially when to qualify as defamation the person hearing the statement (in this case The Arc) must "reasonably recognize[] the statement as being defamatory."  *Haskins v. Baylis*, 440 F. Supp. 2d 455 (D. Md. 2006) (quoting *Samuels v. Tschechtelin*, 135 Md. App. 483 (2000)).

The Plaintiffs' own exhibit reinforces the fact that the statement is not defamatory.  Exhibit B to the Second Amended Complaint is a letter from The Arc to Ms. Ross which purports to convey the substance of the defamatory statement.  The letter states that, despite a statement which supposedly "discourage[es] others in the community from having a good opinion of, or associating with [Ms. Ross]," The Arc makes clear that "it is not a good time" to proceed with a home study and that once the issues are resolved she can proceed with a

home study.  Allowing Ms. Ross to proceed later with a home study, and not rejecting her outright, indicates that The Arc certainly did not regard the statement as defamatory.  This was a case of bad timing, not defamation.  The defamation claim must be dismissed.

## VII.   THE BREACH OF CONTRACT CLAIM MUST BE DISMISSED BECAUSE THERE WAS NO BREACH OF CONTRACT.

Plaintiffs assert that "a settlement agreement was reached between Plaintiff and CCDSS", which bound "CCDSS and its agents."  2d Am. Compl. ¶ 27.  As explained above, and as asserted in the Second Amended Complaint, the alleged perpetrator of the breach, Helen Murray-Miller, is an employee of DHR's Social Services Administration, not CCDSS. It is obvious that one not a party to a contract and one not bound by it cannot breach it. *Cont'l Masonry Co. v. Verdel Constr. Co.*, 279 Md. 476, 480 (1977) (stating that a breach of contract claim must alleged a "contractual obligation owed by the defendant to the plaintiff"). Accordingly, there has been no breach and the cause of action based on the settlement agreement must be dismissed.

The Second Amended Complaint also alleges a breach of contract based on a so-called "Foster Care Bill of Rights."  (Def. Ex. A.)  As the exhibit reveals, this document, even if it were a contract, has not been executed by any official or employee of the state, or indeed by anyone.  Because it has not been executed by the State, Defendants have sovereign immunity to any contract action based on this agreement.  *Stern v. Bd. of Regents*, 380 Md. 691 (2004). *See also* Md. Code Ann., State Gov't § 12-201(a) (LexisNexis 2009) ("the State, its officers,

and its units may not raise the defense of sovereign immunity in a contract action … based on a written contract that an official or employee executed for the State"). Moreover, the only rights that foster parents have in Maryland are granted by statute. Md. Code Ann., Fam. Law § 5-504 (LexisNexis 2006). But § 5-504 also expressly states that it "does not create, and may not be construed to create, a cause of action for foster parents." § 5-504(b). Any breach of contract on this basis must also be dismissed.

## VIII.   THE FIRST AMENDMENT CLAIM MUST BE DISMISSED BECAUSE THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM.

Plaintiff Betsy Ross's First Amendment claim essentially amounts to a claim that Defendants retaliated against her for "expression of her opinion of the financial conduct of CCDSS that she believed was illegal." 2d Am. Compl. ¶ 124.) Such a claim must include three elements: (1) that the plaintiff's speech was protected, (2) that the "alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech" and (3) "that a causal relationship exists between [the] speech and the defendant's retaliatory action." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Furthermore, concerning the second element, a plaintiff must show that the alleged retaliatory conduct" would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). The attached affidavit of Defendant Klesius reveals that any actions by her undertaken not in retaliation for her expression of opinion but out of concern for the safety of the foster

18

children.  Accordingly, summary judgment must be entered against Plaintiffs on this claim as directed at Defendant Klesius.[3]

Contrary to the Second Amended Complaint's allegations, Defendant Klesius's affidavit indicates that the children "were removed solely due to allegations of neglect that indicated a serious risk to the health and safety of the children."  Aff. Klesius.  And contrary to Ms. Ross's allegation that Defendant Klesius knew that Ms. Ross "was scheduled to enter the position of President of the Cecil County Foster Care Association on August 15, 2008, thereby gaining access to financial records," Ms. Klesius asserts under oath that, in reality, "[a]t the time of the removal of the children, [she] knew that Ms. Ross was interested in running for president of the Foster Parent Association, and that elections for the Association were to be held in September 2008."  Aff. Klesius.  Because, Ms. Klesius was not motivated by any retaliation, the First Amendment claim against her must fail.

This count also alleges that there exists a "policy of taking agency action against individuals to prevent them from harming the agency by whistle-blowing," thereby implicating any policy makers for CCDSS.  2d Am. Compl. ¶ 34.  The Supreme Court has made clear that a complaint must allege facts that "raise a right of relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, the Complaint's allegations must amount to more than "threadbare recitals of a cause of action's

---

[3] This claim makes no specific allegations against any Defendant by name, other than Ms. Klesius.

elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009).

Plaintiff Ross's bare allegation of a policy, without the support of any facts to show that such a policy even exists, does not even begin to meet the pleading standards of *Twombly* and *Iqbal*, especially considering that a court need not accept "conclusory factual allegations devoid of any reference to actual events." *Myung Ga, Inc. v. Myung Ga of MD, Inc.*, 2011 U.S. Dist. LEXIS 87496 (D. Md. Aug. 8, 2011) (citing *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979)).

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must allege facts that "raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, a complaint's allegations must amount to more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S.Ct. at 1940. Because the complaint does not do so, it must be dismissed to the extent it is based on any supposed policy of First Amendment retaliation.

## IX.   THE FOURTH AND FOURTEENTH AMENDMENT CLAIMS BY PLAINTIFF K.R. MUST BE DISMISSED.

The only two claims brought specifically by the minor Plaintiff K.R. are the Fourth and Fourteenth Amendment claims. The Fourth Amendment claim is based on the notion that "Plaintiffs had a reasonable expectation of privacy in Plaintiff Ross's home." 2d Am. Compl. ¶ 46. The Fourteenth Amendment claim is based on the assertion that "Plaintiff K.R.

had a procedural due process expectation that Defendants would send notice and receive

evidence of abuse or immediate danger to her before removing her." 2d Am. Compl. ¶ 54.

As discussed above, in the context of an entry into a foster mother's home to investigate

neglect allegations regarding foster children in the home, the Fourth Circuit held that there

was no violation of privacy rights because "the state's interest in examining the neglected

children outweighed any attenuated privacy interest of [the foster mother]." *Wildauer*, 993

F.2d at 373. Nor was there a violation of the Fourteenth Amendment. *Id*. Although the

Fourth Circuit has never directly addressed the issue of whether a foster child has

constitutional rights in such a context, it stands to reason that if a foster mother who owns the

home that the government enters to remove foster children does not have a Fourth

Amendment or Fourteenth Amendment claim, then the foster child, who does not own the

home and whose welfare the state is seeking to protect, does not have such a right either.

Indeed, the two courts of appeals that have ruled on the issue have come to that conclusion.

*See Drummond v. Fulton Cnty. Dep't of Family & Children's Servs.*, 563 F.2d 1200 (5th Cir.

1977); *Darryl H. v. Coler*, 801 F.2d 893 (7th Cir. 1986).

Additionally, Defendants also have qualified immunity to Plaintiff K.R.'s claims.

Foster children do not have a "clearly established statutory or constitutional right" to not have

the state enter the home in which they are living in order to remove them based on allegations

of neglect, nor is such a right "beyond debate." K.R.'s Fourth and Fourteenth Amendment

claims must be dismissed.

## X.   ALL FEDERAL CLAIMS AGAINST NEWLY-ADDED DEFENDANTS ARE BARRED AS UNTIMELY.

Because 42 U.S.C. § 1983 contains no express statute of limitations, federal courts apply the applicable limitations period from state law.  The Supreme Court has held that generally the applicable limitations period is the period that state law applies to personal injury actions.  *See Wallace v. Kato*, 549 U.S. 384, 387 (2007).  In Maryland, the applicable limitations period is three years, the general period for civil actions.  *See* Md. Code Ann., Cts & Jud. Proc. § 5-501 (LexisNexis 2006); *see also, e.g.*, *Holtzman v. Corr. Med. Servs.*, 2011 U.S. Dist. LEXIS 59758 ((D. Md., June 2, 2011) (the applicable statute of limitations for personal injury actions in Maryland is three years).

The Complaint and Second Amended Complaint allege that the federal claims arose on or about August 15, 2008, when the Defendants took the foster children from Plaintiff Ross's home.  The Second Amended Complaint, which added seven new Defendants and two new causes of action, was filed on August 25, 2008, more than three years since the federal claims arose.[4]  The two new causes of action and any federal claims against the seven new Defendants would only fall within the three year

---

[4] To the extent that any federal claims purport to against three of the new Defendants, Bailey, Linkous, and Siciliano, whether they relate back or not, they must be dismissed because the Second Amended Complaint contains no allegations that they engaged in any conduct that amounts to any cognizable claim.  Also, the Second Amended Complaint appears to make no federal claims against newly-added Defendant Helen Murray-Miller.

limitations period if the amendment relates back to the filing of the original Complaint.

Relation back of amended pleadings in federal courts is governed by Rule 15(c)(1). That rule sets out three situations in which an amendment can relate back. The applicable situation in this case is the third one: "the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. Proc. 15(c)(1)(C). This subsection makes clear that the Second Amended Complaint can relate back only if the Plaintiffs made a "mistake concerning the proper party's identity."

In this case, it is clear that Plaintiffs made the decision to name only Defendants Ricciuti and Klesius. Whether the decision was borne out of a strategic choice or out of carelessness, it was not a case in which the Plaintiffs were mistaken as to the correct identity of the Defendants. This conclusion is compelled by four facts: (1) the Second Amended Complaint added new allegations against the newly added Defendants, (2) the Second Amended Complaint added two new causes of action (a civil conspiracy claim and a First Amendment claim), (3) the Second

Amended Complaint was added in response to a Motion to Dismiss which pointed out the legal shortcomings of the original Complaint[5], and (4) as to four of the newly added Defendants, Plaintiff Ross was aware of their roles at the time of the filing of the original Complaint.

As to the last point, the affidavits of Defendants Compton, Cotton, and Larson state that Ms. Ross was acquainted with all of them, and that Ms. Ross was present when the children were removed from her home.  Affs. Compton, Cotton, Larson. Because Plaintiff Ross was knowledgeable about the alleged roles of the newly-added Defendants, she cannot plead ignorance as an excuse for not naming them as Defendants in the original Complaint.

Most importantly, because of Ms. Ross's knowledge of their roles, these three Defendants had every reason to believe that they were never going to be named as defendants.  This legitimate belief is significant in that the Supreme Court has stated that the purpose of "relation back" is "to balance the interests  of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes

---

[5] Plaintiffs' Memorandum filed in response to the Motion to Dismiss states that Plaintiffs "have further amended the Complaint to provide the additional clarity requested by Defendants and to add Defendants" and that they "have also amended their Complaint to more repeatedly and in even more specificity identify Defendants under each cause of action by name." ( Pls.' Mem. Supp. Resp. Opp. Defs.' Second Mot. Dismiss at 3, 9.)

on their merits. . . .   A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose." *Krupski v. Costa Crociere*, 130 S. Ct. 2485, 2494 (2010).

In interpreting Rule 15(c) in *Krupski*, the Supreme Court made clear that "when the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met**."** 130 S. Ct. at 2496.   Plaintiffs' failure to name the seven new Defendants in the original Complaint was a fully informed choice, not a mistake as to any defendant's identity. Plaintiffs' failure means that all federal claims against these four new Defendants do not relate back the original Complaint and therefore are beyond the three-year limitations period.   The federal claims against them must be dismissed.

## CONCLUSION

For the reasons stated, the Second Amended Complaint should be dismissed with prejudice or alternatively Defendants should be granted summary judgment.

Respectfully submitted,

DOUGLAS F. GANSLER
Attorney General of Maryland

/s/_____

Bradley J. Neitzel
Assistant Attorney General
311 West Saratoga Street, Suite 1015
Baltimore, Maryland 21201
Bar # 26787
(410) 767-7726
(410) 333-0026 (fax)
bneitzel@dhr.state.md.us


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of February, 2012, a copy of the

foregoing was served, by electronic filing, upon:

Daniel L. Cox
104 N. Court Street
Frederick, MD 21701
Attorney for Plaintiffs


/s/_____

Bradley J. Neitzel