# EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BETSY ROSS, et al.,

    Plaintiffs,

v.

NICHOLAS RICCIUTI, et al.,

    Defendants.

Case No. 1:11-CV-00181-WDQ

## AFFIDAVIT OF BETSY ROSS

1. I am over the age of eighteen (18) and am competent to testify to the following upon personal knowledge.

2. That in or around July through August 2008, I discovered that the Cecil County Department of Social Services ("CCDSS"), through the actions of Mary Klesius, was placing and managing unspent State funds into the Cecil County Foster Parent Association ("CCFPA") checking account, and I began taking steps to report this apparently unlawful practice by asking Mary Klesius for copies of all CCFPA bank statements, by not immediately agreeing to expend said funds as requested by Mary Klesius, and by making a complaint to the Ombudsman for the Maryland Department of Human Resources ("MDDHR"), John Bertulis.

3. That on August 15, 2008, at 1:30pm, Mary Klesius and Rebecca Sutton pulled me out of a foster parent association meeting and informed me that CCDSS was removing my foster care children and that I would be further investigated.

4. That on or about September 10, 2008, Ombudsman John Bertulis began investigating CCDSS.

5. That on or about August 15, 2008, CCDSS began investigating me.

6. That on or about August 15, 2008, at 3:10pm, Tina Linkous reported allegations of neglect against me by calling in a neglect report while driving in Pennsylvania on return from a Friday four (4) hour round-trip "interview" of a ten (10) year old former foster child in my home, known to have a habit of telling wild and imaginative stories not based in any truth.

7. CCDSS had previously approved the use of the pool at my house for several years. CCDSS never expressed disapproval of the pool, never asked me to keep the children away from the pool, and never required me to stop using the pool. Even after CCDSS replaced my pre-adoptive child K.R. in my home, they continued to allow me to use my pool.

8. That on or about August 15, 2008, at 1:30pm, Tina Linkous and Mary Klesius decided, based on allegations of neglect, that my foster children, along with my minor-adoptee child K.R., must be removed from my home. My adopted child, adopted only two and a half months prior, and my biological child were not removed.

9. That on or about August 15, 2008, at 4:30pm, CCDSS and its agents, Defendants Rebecca Sutton, Latonya Cotton, and Kim Compton, removed my foster children J.C., J.C., K.C. and I.K.D. from my care and control without permission, a warrant, or any indication or belief of serious, immediate danger.

10. That on or about August 15, 2008, at 4:30pm, CCDSS and its agents, Defendants Rebecca Sutton, Latonya Cotton, and Kim Compton, removed my minor adoptee-child K.R., who was in my full legal custody, care and control and three (3) days away from the adoption finalization hearing, from my care and control without permission, a warrant, or any indication or belief of serious, immediate danger.

11. At no time did I ever knowingly waive my Fourth Amendment rights.

12. I reasonably expected, at all times, that my property and family would remain private within my home.

13. That in a meeting with me one or about September 17, 2008, Barbara Siciliano verbally expressed her support for the actions of Mary Klesius in removing the children from my home.

14. That on or about September 28, 2008, CCDSS replaced my adoptee child K.R. in my home, and set another adoption finalization hearing for two (2) weeks later on October 15, 2008.

15. That on or about January 21, 2010, following the revelation of apparently false and contradictory testimony by agents of CCDSS, a settlement agreement was reached between myself and CCDSS, as represented by counsel, that Ruled Out the false allegations against me and required CCDSS and its agents to maintain complete confidentiality regarding its findings and to forever cease and desist from making any negative or disparaging statements about me.

16. That as part of the settlement of all remaining issues, I offered to relinquish my CCDSS foster care home license voluntarily, since my application to become a privately certified and licensed foster care provider was pending with "The Arc – Northern Chesapeake Region" ("The Arc"), a private foster care association, as I had previously been informed that a license should not be a problem for me to obtain.

17. That on information and belief, sometime before March 18, 2010, Defendant Helen Murray-Miller, acting as an agent of both MDDHR and the CCDSS foster care authority, communicated to The Arc the false information, supplied to her by CCDSS, that I still had "unresolved issues" with CCDSS that would prevent The Arc from granting me a private license.

18. That on or about March 18, 2010, The Arc sent me a letter stating, in part, "following consultation with our licensed monitor from Department of Human Resources . . . The unresolved and high profile nature of your current situation with several entities determines that it is not a good time to proceed with a home study."

19. This letter denied my application for a home study and told me I could only re-apply "once your issues with Cecil County Department of Social Services are resolved to our mutual satisfaction."

20. That following the settlement agreement of January 21, 2010, all CPS allegations had been Ruled Out and expunged, and no unresolved issues regarding any further investigations existed between myself and CCDSS.

21. That on information and belief, Nicholas Ricciuti, in his capacity as director of CCDSS, and Defendant Susan Bailey, in her capacity as Assistant Director of Services at CCDSS, were and still are responsible for controlling and directing the policies of CCDSS and the actions of its agents, including all other Defendants.

22. That on information and belief, Nicholas Ricciuti has maintained control over a policy of taking agency action against individuals to prevent them from harming the agency by whistle-blowing.

23. That I have suffered from these actions by Defendants and continue to suffer ongoing damage, particularly because Defendants' actions are all capable of repetition and are in fact being repeated in an ongoing manner to deprive me of my rights.

Dec 21 2011 10:52PM Clifford Chiropractic Cen 410-620-4322 page 6
Case 1:11-cv-00181-CCB   Document 54-6   Filed 03/19/12   Page 6 of 6
Case 1:11-cv-00181-WDQ   Document 43-2   Filed 12/21/11   Page 6 of 6

I HEREBY CERTIFY UNDER PENALTY OF PERJURY THAT THE ABOVE STATEMENTS ARE TRUE AND CORRECT, TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

*[signature: Betsy Ross]*

Betsy Ross, Plaintiff affiant